UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
S&O CONSTRUCTION SERVICES, INC.,

                              Plaintiff/Petitioner,

           -against-

APS CONTRACTING, INC.,

                              Defendant/Respondent.
-------------------------------------------------------------------x

18-CV-5836 (CS)

**OPINION AND ORDER**

Appearances:

Walter G. Breakell
Matthew J. Beck
Breakell Law Firm P.C.
Albany, New York
*Counsel for Plaintiff/Petitioner*

Daniel C. Carmalt
Carmalt Law LLC
Nutley, New Jersey
*Counsel for Defendant/Respondent*

Seibel, J.

      Petitioner S&O Construction Services, Inc. ("S&O"), pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"), seeks confirmation of an arbitration award issued against Respondent APS Contracting, Inc. ("APS"). (Doc. 5.) For the following reasons, Petitioner's motion to confirm the award is GRANTED.[1]

---

[1] Respondent frames its opposition memorandum as a cross-motion to vacate and/or modify the arbitration award. (Doc. 15 ("R's Opp.").) Respondent's cross-motion is procedurally defective because Respondent failed to file a Notice of Motion under Federal Rule of Civil Procedure 7(b) and Local Civil Rule 7.1(a). Additionally, Respondent's cross-motion is time-barred under the FAA, which provides that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12; *see Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984) (because "[n]o exception to this three month limitations period is mentioned in the statute . . . a party may not raise a motion to vacate, modify, or correct an arbitration award after the three month period has run, even when raised as a defense to a motion to confirm.") Accordingly, I consider Respondent's opposition memorandum only as opposition to Petitioner's motion to confirm the arbitration award, not as a cross-motion to vacate or modify it.

1

## I. BACKGROUND

### A. Facts

The following facts are taken from the Petitioner's Petition to Confirm Arbitration, (Doc. 1-1 ("Pet.") at 6-8),[2] accompanying exhibits, (*id.* at 10-21), and the Affidavit of Petitioner's counsel Matthew J. Beck, (Doc. 6 ("Beck Aff.")).

Petitioner S&O is a New York corporation with offices in Dutchess County, New York. (Pet. ¶ 1.) Respondent APS is a New Jersey corporation that is registered and does business in New York, and maintains its primary office in New Jersey. (*Id.* ¶ 2.) On or about June 7, 2012, APS entered into a contract with the State University Construction Fund ("SUCF") for the renovation of the 75,000 square foot Wooster Science Building on the State University of New York New Paltz campus (the "Project"). (Beck Aff. Ex. G at 1.) APS entered into a subcontract with S&O to perform the mechanical and plumbing work required for the Project. (*Id.*)

Subparagraph 6.2.1 of the subcontract agreement between S&O and APS provides:

> Any claim arising out of or related to this Subcontract, except claims as otherwise provided in Subparagraph 4.1.5 and except those waived in this Subcontract, shall be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 6.1.

(*Id.* Ex. A at 5.) Subparagraph 4.1.5 of the subcontract further provides:

> The Subcontractor agrees that the Contractor and the Architect will each have the authority to reject Work of the Subcontractor which does not conform to the Prime Contract. The Architect's decisions on matters relating to aesthetic effect shall be final and binding on the Subcontractor if consistent with the intent expressed in the Prime Contract.

(*Id.* at 3.)

---

[2] Citations to pages of the Petition to Confirm Arbitration refer to the Court's electronic case filing system page number stamped at the top of each page.

Subparagraph 6.2.2 of the parties' subcontract provides: "Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA Rules") currently in effect." (*Id.* at 5.) Rule 9(a) of the AAA Rules states that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Rule 9(a).

Petitioner and Respondent participated in an arbitration hearing initiated by Petitioner to collect funds owed it by Respondent for work on the Project. (Pet. ¶¶ 4-5.) The arbitration hearing took place in Westchester County from March 12-14, 2018. (*Id.* ¶ 5.) All parties were represented by counsel, (*id.* ¶ 6), and the arbitrator was Mark Seiden, an experienced construction lawyer, (*id.* ¶ 7). In response to Petitioner's arbitration claim, Respondent asserted various defenses and offsets and alleged that Petitioner's work was incomplete, untimely, and/or had not been accepted by representatives of the Project owner. (*Id.* ¶ 8.) On May 3, 2018, after hearing testimony, receiving exhibits, and receiving various pre- and post-arbitration submissions from each party, the arbitrator issued an award in favor of Petitioner in the amount of $520,177.77, plus continuing interest at 9% from July 8, 2016, which totaled $606,007.10 as of the date of the award. (*Id.* ¶ 9; Beck Aff. Ex. G at 3.) The arbitrator expressly rejected the Respondent's defenses and claimed offsets (with the exception of $15,008.00 in deductions). (*Id.* ¶ 10; Beck Aff. Ex. G at 2.)

**B.      Procedural History**

On May 22, 2018, Petitioner filed its petition in this action in the New York Supreme Court in Westchester County, seeking confirmation of the arbitrator's award. (Doc. 1-1.) On

June 27, 2018, the case was removed to this Court on diversity grounds. (Doc. 1.) On July 10, 2010, Petitioner filed its motion to confirm the arbitration award, (Doc. 5), the Beck Affidavit, (Doc. 6), and a memorandum of law in support of its motion to confirm the arbitration award, (Doc. 7 ("P's Mem.")). On August 14, 2018, having not heard from the Respondent, the Petitioner filed with the Court a letter requesting that the Court enter an order and judgment in favor of Petitioner, (Doc. 10 at 1-2), and a proposed order and judgment, (*id.* at 3-4). Respondent replied by letter requesting that the Court not enter the Petitioner's proposed order. (Doc. 12.) The Court then instructed Respondent to respond to Petitioner's motion, (Doc. 14), which Respondent did on August 31, 2018, (Doc. 15). Plaintiff filed its reply memorandum on September 6, 2018. (Doc. 16 ("P's Reply.").)

Petitioner requests that the Court: (1) confirm the arbitration award in favor of Petitioner, (2) enter judgment against Respondent in the amount of $606,007.10 with continuing interest at the New York State judgment rate of 9% from the date of the arbitration award, and (3) deny any and all relief requested by the Respondent. (P's Mem. at 9.)

## II. DISCUSSION

### A. Standard of Review

A motion to confirm an arbitral award should be "treated as akin to a motion for summary judgment." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit

under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." *Id.* 56(e)(2)-(3).

"Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair*, 462 F.3d at 110 (citations and internal quotation marks omitted). "Under the FAA, courts may vacate an arbitrator's decision only in very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (internal quotation marks omitted). In this Circuit, "[t]he showing required to avoid summary confirmation of an arbitration award is high." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (citting *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987)); *see Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003) ("It is well established that courts must grant an [arbitrator's] decision great deference.").

Review of an arbitral award by a district court "is 'severely limited' so as not unduly to frustrate the goals of arbitration, namely to settle disputes efficiently and avoid long and expensive litigation." *Salzman v. KCD Fin., Inc.*, No. 11-CV-5865, 2011 WL 6778499, at *2 (S.D.N.Y. Dec. 21, 2011) (quoting *Willemijn*, 103 F.3d at 12). Indeed, "an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union, AFL-CIO*, 954 F.2d 794, 797 (2d Cir. 1992) (internal quotation marks omitted).

### B. Confirmation of the Arbitration Award

Respondent argues that Petitioner's arbitration award should not be confirmed under § 10(a)(3) and (4) of the FAA. (R's Opp. at 7.) The FAA provides for vacatur:

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and

material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(3)-(4). Respondent further argues that the arbitrator erred in calculating an interest rate of 9% instead of 2%. (R's Opp. at 10 (citing 9 U.S.C. § 11).)

The Court has reviewed, in detail, the parties' agreement and the award. On the record, and based on the limited review that is appropriate, the Court concludes there is no basis to vacate or modify the arbitration award. Petitioner has shown there is no material issue of fact in dispute and that there is at the least a "barely colorable justification for the outcome reached." *Landy Michaels Realty Corp.*, 954 F.2d at 797 (internal quotation marks omitted).

1. Section 10(a)(3)

Under § 10(a)(3) of the FAA, "except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review." *Rai v. Barclays Capital Inc.*, 456 F. App'x 8, 9 (2d Cir. 2011) (summary order) (internal quotation marks omitted). Arbitrators enjoy "broad discretion" on whether to hear evidence and need not allow parties to "present every piece of relevant evidence." *AT & T Corp. v. Tyco Telecomms. (U.S.) Inc.*, 255 F. Supp. 2d 294, 303 (S.D.N.Y. 2003) (internal quotation marks omitted).

Respondent argues that the arbitrator's refusal to adjourn the hearing so that Respondent could obtain testimony from a non-party witness rises to the level of unfairness contemplated by § 10(a)(3). I disagree. Evidentiary hearings in this case were originally scheduled for December 20 and 21, 2017. (Beck Aff. ¶ 17.) At the request of Respondent's counsel and over Petitioner's objection, the arbitrator granted a three-month adjournment so that Respondent could obtain testimony from non-parties SUCF and two of SUCF's design consultants. (*Id.* ¶ 18.) The

7

evidentiary hearing was rescheduled to occur beginning March 12, 2018. (*Id.* ¶ 19.) At the close of the hearing on March 13, Respondent's counsel advised that he had attempted to serve a subpoena to the SUCF just one business day prior to the start of the evidentiary hearings. (*Id.* ¶ 20.) In other words, despite being granted a three-month adjournment for the very purpose of obtaining testimony from a non-party witness, Respondent served no subpoenas until one business day before the arbitration began. Counsel for SUCF indicated to Respondent that SUCF would not produce a witness on the timetable sought in the subpoena. (*See id.* ¶ 22.) Respondent requested that the proceeding be delayed once again. (*Id.*) Having already granted an adjournment and in light of Respondent's counsel's failure to promptly subpoena SUCF, the arbitrator declined Respondent's second request for an adjournment:

> Had counsel for [R]espondent issued a subpoena promptly after the Amended Scheduling Order was issued, [R]espondent's counsel would have had ample opportunity to resolve the contested subpoena. However, having failed to promptly subpoena non-party witnesses, I find that [R]espondent's counsel waived its right to produce the SUCF witness at the evidentiary hearings.

(*Id.* Ex. E ¶ 6.) In short, the arbitrator afforded Respondent ample opportunity to introduce evidence helpful to Respondent's case and Respondent squandered it. Even after Respondent had wasted three months not collecting evidence, the arbitrator still permitted Respondent's president to testify as to the positions taken by SUCF at a November 2014 meeting between SUCF and Respondent, which Respondent's counsel proffered as the testimony intended to be elicited from the SUCF witness. (Beck Aff. ¶ 24.) Between granting an adjournment and permitting Respondent to introduce testimony that Respondent had failed to responsibly obtain, it can hardly be said that the arbitrator's ruling violated fundamental fairness.

8

2. Section 10(a)(4)

An arbitration award may be vacated on the ground that "the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). The Second Circuit has "consistently accorded the narrowest of readings to the [FAA's] authorization to vacate awards [pursuant to § 10(a)(4)]." *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 220 (2d Cir. 2002) (second alteration in original) (internal quotation marks omitted). "[T]he scope of authority of arbitrators generally depends on the intention of the parties to an arbitration, and is determined by the agreement or submission." *187 Concourse Assocs. v. Fishman*, 399 F.3d 524, 527 (2d Cir. 2005) (internal quotation marks omitted). The presence of an arbitration clause creates "a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (alteration in original) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)); *see Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 130 (2d Cir. 2015) ("'[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'") (alteration in original) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). The role of the courts is "strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made." *Warrior & Gulf Navigation*, 363 U.S. at 582.

Respondent argues that the arbitrator exceeded his authority by rendering decisions regarding the acceptance or rejection of S&O's work in violation of subparagraph 4.1.5 of the

subcontract. (R's Opp. at 7-9.)³ Again, I disagree. It is not clear that subparagraph 4.1.5 provides that the dispute between Petitioner and Respondent is not arbitrable. Instead, subparagraph 4.1.5 simply states that the contractor (Respondent) or the architect on the project each have the authority to reject work of the subcontractor (S&O) that does not conform to the primary contract. (Beck Aff. Ex. A at 3.) In fact, subparagraph 4.1.5 does not even state that Respondent's rejection of work "shall be final and binding on the Subcontractor" while subparagraph 4.1.5 does state that the architect's decisions on matters relating to aesthetic effect "shall be final and binding on the Subcontractor if consistent with the intent expressed in the Prime Contract." (*Id.*) And even the "final and binding" language attached to the architect's rejection on matters relating to aesthetic work does not mean that whether such a rejection is consistent with the intent of the Prime Contract is necessarily precluded from arbitrability.

Therefore, the scope of the arbitration provision is at issue. While the presumption is that courts decide questions of arbitrability, *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 406 (2d Cir. 2009), that presumption is rebutted by clear and unmistakable evidence that the parties intended the arbitrator to decide arbitrability, *Contec Corp. v. Remote Sol., Co.*, 398 F.3d

---

³ The Court rejects Petitioner's argument that Respondent waived its arbitrability argument by putting forth Petitioner's alleged failure to properly and timely complete its work as affirmative defenses in the arbitration proceeding. (P's Reply at 5; *see* Doc. 16-1 ¶ 3.) While it is true that when "[a] petitioner participate[s] in the arbitrator's determination of the issue, any right to seek de novo review of arbitrability would be waived," it is also true that "if a party explicitly preserves their objection to jurisdiction before the arbitrator, it will be allowed to challenge jurisdiction in a petition to vacate." *S & G Flooring, Inc. v. N.Y.C. Dist. Council of Carpenters Pension Fund*, No. 09-CV-2836, 2009 WL 4931045, at *4-5 (S.D.N.Y. Dec. 21, 2009). On November 27, 2017, Respondent filed a motion to stay the evidentiary hearings arguing, in part, that there were issues that were not within the arbitrator's jurisdiction. (*See* Doc. 15-8 at 7.) Although the arbitrator denied APS's motion to stay, (Doc. 16-4 at 2), by filing the motion and raising the arbitrability issue, Respondent indicated its unwillingness to submit to arbitration. Therefore, Respondent preserved its objection to jurisdiction. *See, e.g.*, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 946 (1995) (arbitrability of dispute subject to review by courts where party filed a "written memorandum objecting to the arbitrators' jurisdiction" thereby "forcefully objecting to the arbitrators deciding their dispute"); *Opals on Ice Lingerie v. Bodylines, Inc.*, No. 99-CV-3761, 2002 WL 718850, at *6 (E.D.N.Y. Mar. 5, 2002) (moving for a stay of arbitration proceedings partial basis for concluding party did not waive right to contest arbitrability of dispute).

205, 208 (2d Cir. 2005). Such clear and unmistakable evidence exists when the agreement incorporates by reference arbitration rules that give the arbitrator that authority. *Id*.

Here, the parties agreed, by way of explicitly adopting the AAA Rules, that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." (AAA Rule 9(a); *see* Beck Aff. Ex. A at 5.) Thus, the question of arbitrability falls to the arbitrator. *See Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 415 (E.D.N.Y. 2014) (collecting cases). Whether or not the dispute is in fact arbitrable, the arbitrator did not exceed his powers in ruling on an issue the parties agreed was his to decide. *See Oxford Health Plans LLC*, 569 U.S. at 569 ("Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits.") (internal quotation marks omitted); *N.Y. Hotel & Motel Trades Council, AFL-CIO v. Hotel Nikko of N.Y., Inc.*, Nos. 91-CV-755, 91-CV-795, 1991 WL 168284, at *4 (S.D.N.Y. Aug. 22, 1991) ("If the Court finds that the parties submitted the jurisdictional question to the arbitrator for a decision, then that finding of the arbitrator must be given the deference accorded an arbitrator's decision on the merits.").

### 3. Interest Rate

Respondent requests that the arbitration award be modified to reflect an interest rate of 2% instead of 9%. (R's Opp. at 10-11.) Under the FAA, a court may modify an award "[w]here there was an evident material miscalculation of figures." 9 U.S.C. § 11(a). Subparagraph 15.2 of the subcontract provides: "Payments due and unpaid under this Subcontract shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is

11

located." (Beck Aff. Ex. A at 11.) Beneath this provision, the subcontract reads, "[i]nterest rate will appl [*sic*] for this project." (*Id.*) The "Amendment & Modifications" section of the subcontract indicates that the parties agreed to insert the word "judgment" so that subparagraph 15.2 would read "judgment [i]nterest rate will appl [*sic*] for this project." (*Id.* at 13.) In New York, "[i]nterest shall be at the rate of nine per centum per annum, except where otherwise provided by statute," N.Y. C.P.L.R. § 5004 (McKinney 2012), and the arbitrator concluded that the awarded interest on the total award be at the "judgment rate of 9%," (Beck Aff. Ex. G at 3). Respondent's argument ignores the agreed-upon insertion of the word "judgment" into the subcontract and its resulting analysis thus warrants no further discussion. Therefore, I decline to modify the interest rate of the arbitration award.

## III. CONCLUSION

For the reasons set forth above, Petitioner's motion to confirm the arbitration award in the amount of $606,007.10 with interest at 9% from May 3, 2018, is GRANTED. The Clerk of Court is respectfully directed enter judgment in favor of Petitioner, terminate the pending motion, (Doc. 5), and close this case.

**SO ORDERED.**

Dated: December 4, 2018
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.